Betty J. KARAN and Marjorie A. Mitchell, on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

NABISCO, INC., a corporation, Defendant,

and

Equal Employment Opportunity Commission, Intervenor.

Carol MAYGER, on behalf of herself and on behalf of all other persons similarly situated, Plaintiff,

v.

NABISCO, INC., a corporation, Defendant.

Civ. A. Nos. 75–1356, 77–927.

United States District Court, W. D. Pennsylvania.

May 31, 1979.

Roslyn M. Litman, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for plaintiffs.

Leonard Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

Cassandra M. Menoken, Equal Employment Opportunity Commission, Washington, D. C., for intervenor.

## MEMORANDUM

SNYDER, District Judge.

The Plaintiffs have moved this Court to enter an order allowing them to file discovery pleadings concerning surveys and/or interviews conducted by the Defendant. The Plaintiffs allege that they have recently discovered that Nabisco has been formally interviewing its female employees concerning matters at issue in this litigation.

At a regularly scheduled deposition of a personnel manager at one of Defendant's bakeries, defense counsel refused to allow him to be questioned with respect to a survey being carried out by the Defendant. Later, another deponent acknowledged that such a survey was being conducted, but could not testify as to the details. The Plaintiffs allege that to the best of their knowledge questions were propounded to class members:

(a) without informing counsel for the class;

(b) without advising the class members of the existence of the lawsuit;

(c) without advising the class members that this lawsuit seeks relief on their behalf;

(d) without advising the class members that the information which they supplied might be used in a manner adverse to their interests;

(e) without advising the class members that they were free to refuse to answer the questions;

(f) without advising the class members that they were entitled to representation of counsel; and

(g) without advising the class members that they were entitled to receive copies of their responses upon request.

The Plaintiffs then allege that because they represent the interests of the members, they were entitled to be apprised of the details of the *ex parte* questioning done by the Defendant and that, in addition, such information was essential to the proper presentation of their case for trial since they could not gather such information without great expense and effort, and could not realistically obtain the information in any way other than from the Defendant. They assert further that it was critical for the Plaintiffs to be apprised of the methodology of the Defendant's survey in order to effectively rebut any inferences the Defendant would seek the Court to draw from the results of the survey.

The Plaintiffs attached to their Motion the Survey Interrogatories proposed to be propounded and the Requests for Production relative thereto.

The Defendant filed a statement in opposition to the Plaintiffs' Motion setting forth that after extensive discovery the Court, on January 24, 1979, established a final closing date for discovery which was then extended to July 1, 1979, with the Defendant having 60 days of uninterrupted discovery commencing May 1, 1979. Since the setting of the final closing date, Defendant has been served with additional discovery pleadings which resulted in the Court granting an extension to July 1, 1979 for the inspection and copying of records intended to chronicle the work history of the female Nabisco employees since November 17, 1971. An additional order of court granted an extension sought by the Equal Employment Opportunity Commission to June 8, 1979. The

Defendant then claims that it is now faced with additional extension not justified under the facts of this case.

The matter came on for hearing on argument of counsel on May 2, 1979, and on May 3, 1979, the Defendant was directed to submit to the Court *in camera* the methodology of the survey conducted among its female bakery workers in order to ascertain the nature of the survey and the extent thereof. There was subsequently submitted the following:

1. the Affidavit of Paul I. Weiner regarding Nabisco's Employee Attitude Survey;

2. a copy of the "current employee" questionnaire utilized in the employee survey at Nabisco's Buena Park bakery;

3. a copy of the "laid-off employee questionnaire (telephone interview)" utilized regarding Nabisco's Buena Park bakery;

4. a copy of the "former employee questionnaire (telephone interview)" utilized regarding Nabisco's Buena Park bakery;

5. copies of three cards utilized in conjunction with the survey at Nabisco's Buena Park bakery (these cards are identified at appropriate portions in the questionnaires);

6. a copy of an "Interviewer's Manual"; and

7. a brief entitled "Defendant Nabisco's Statement In Support Of Preserving The Integrity Of Its Employee Surveys And In Opposition To Plaintiffs' Discovery Of The Methodology Or Content Of Its Survey".

The Court has carefully examined all of these documents. From the Affidavit of Paul I. Weiner, we glean that an outside survey organization was employed for the purpose of developing a defense to the claim asserted against Nabisco, Inc., particularly in light of the holdings of the Third Circuit Court of Appeals in *Pittsburgh Press Club v. United States*, 579 F.2d 751 (3rd Cir. 1978). Without disclosing the contents of the survey, it was designed to elicit the views of a sample of respondents about various aspects of their job. It involved primarily the collection of data concerning background characteristics related to employment, as well as the employee's views of the various shifts and jobs as available at the plants. The interviewers were not made aware of the purposes of the survey or of the particular litigation, but only that it was an attitudinal survey. Nor were the survey questions available either to management or union officials, and no indication was given that the survey was related to the instant proceedings. Basically, the survey sampled employees currently working, employees on lay-off status, and former employees with respect to jobs identified by a statistical expert (an expert outside the survey organization) which would be the focus of the defense.

It appears that the survey organization had complete charge of the procedures for administration of the survey, which involved the definition of the applicable group and the construction of the representative sampling of female employees. Interviewers were trained by the survey organization in the correct procedure for conducting the survey. Upon arriving at a bakery, they met with the employee who had been asked by a bakery official to report to a private room where only the interviewer and the employee met. No other bakery official or personnel were present during the interview and the interviewers reportedly did not communicate any matters relating to the matter of this suit. An examination of the "Interviewer's Manual" and the various questionnaires fully support this statement. The "Interviewer's Manual" does not discuss the suit or the fact that the survey was done in conjunction with the defense. It is clear that final aspects of the theories of Defendant's experts regarding Nabisco's defense strategy would be revealed if the questionnaires and the "Interviewer's Manual" were produced in discovery. We find nothing improper in the processes used by the Defendants in this case in the preparation of this survey. Plaintiff's counsel contend they need the materials in order to properly influence the members of the Plaintiff class prior to the conducting of the survey. However, such influence would clearly be improper under

*Pittsburgh Press Club, supra.* Plaintiff's counsel also want the material in order to determine which areas Defendant has identified as potential problem areas, as well as an idea of the planning in regard to those areas. If and when defense counsel determine that they intend to use this survey at trial, the expert's report will, of course, be required as part of the pretrial statement. Under Fed.R.Civ.P. 26(b)(3), defense counsel at this time cannot be required to disclose possible defenses which could occur if they were required to deliver the documents at this time.

We note in particular that the material is not necessary for the preparation of the Plaintiffs' case, and Plaintiffs have failed to make a requisite showing that they are "unable without undue hardship to obtain the substantial equivalent of the material by other means". Fed.R.Civ.P. 26(b)(3). We also note that the Plaintiffs and the EEOC have conducted extensive discovery, and we cannot at this time think that they are entitled to the fruits of the Defendant's labor.